IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARVIN P. HARRIS                    *
                                    *
    v.                              *   Civil No. JFM-05-3355
                                    *
PARSONS BRINCKERHOFF QUADE           *
 & DOUGLAS, INC.                    *
                                    *
                                 *****

MEMORANDUM

URS Corp. ("URS") has filed a motion under Fed. R. Civ. P. 12(b)(3) seeking dismissal for improper venue or, in the alternative, severance of the claims against it and transfer to the U.S. District Court for the Eastern District of Virginia. *See* 28 U.S.C. § 1406(a). I will grant the motion insofar as it seeks transfer. Additionally, in the interests of justice and judicial economy, I will exercise my discretion under 28 U.S.C. § 1404(a) and also transfer the claims against Parsons Brinckerhoff Quade & Douglas, Inc. ("Parsons"). In making these rulings, I will dispense with a recitation of the facts and instead focus my discussion solely on the parties' legal arguments.

I

Harris has asserted a Title VII claim against URS, and under Title VII a plaintiff's choice of forum is limited to three locations: (1) any judicial district in the state in which the unlawful employment practice is alleged to have occurred; (2) the judicial district in which the relevant employment records are maintained and administered; or (3) the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice. 42 U.S.C. §

1

2000e-5(f)(3). Conceding that venue is proper only in the Eastern District of Virginia under the first two options, Harris focuses his opposition on the third option. (*See* Harris Opp. Br. at 14-15). Specifically, he argues that absent the alleged discriminatory employment practices he would have returned to work in Maryland because (1) though he was stationed in Alexandria, Virginia, he often traveled to Maryland to perform work-related tasks, (*id*. at 11); and (2) Parsons would have assigned him to a new project in Baltimore which was the result of another joint venture between Parsons and URS, (*id*. at 12). Neither argument is meritorious.

As for Harris' first argument, he cites no case law in support of the proposition that venue is appropriate in any district to which the plaintiff was or would be required to travel for work.[1] Absent such authority, I see no reason to construe the venue provision in this manner. Harris' interpretation would radically expand the venues available to employees pursuing a Title VII claim. For instance, a consultant based out of Connecticut who travels regularly to Washington, D.C., New York City, Boston, and Philadelphia would be able to bring suit in any of these five jurisdictions. An interpretation that limits venue to the district in which the employee would have been primarily stationed is therefore far more reasonable. In this case that location is Alexandria. (*See* Memorandum from Marvin P. Harris to John N. Rever (Apr. 30, 1998), Exhibit B to First Amended Complaint (accepting position as Document Control Coordinator for the Woodrow Wilson Bridge Project and acknowledging that he would be commuting to the Project's office in Alexandria, Virginia)).

---

[1] The cases that Harris does cite addressed situations in which it was not entirely certain where the employee would have been *stationed*. (Harris Opp. Br. at 12 (citing, for example, *Johnson v. Washington Gas Light Co.*, 89 F. Supp. 2d 45, 47 (D.D.C. 2000) (holding that venue for a Title VII claim was appropriate in Washington, D.C. when the record demonstrated that it was likely plaintiff would have been assigned to an office in the city))). None of the plaintiffs argued that venue was appropriate in jurisdictions to which they might have *traveled* in connection with their jobs.

Turning next to Harris' second argument, the problem with his analysis is that he conflates Parsons with URS. Unlike Parsons, URS' relationship with Harris ended when he was terminated from the Woodrow Wilson Bridge Project. Neither the complaint nor Harris' affidavit establishes that URS had any input into or influence over Parsons' decision whether to retain Harris to work on the new project. (Harris Opp. Br. at 9-10; URS Reply Br. at 4). Thus, because URS's alleged unlawful behavior occurred in relation to Harris' job in Alexandria only, but for that behavior Harris would have returned to work in Alexandria, not Baltimore.

II

URS does not contest that the District of Maryland is an appropriate venue for the other claims Harris asserts. That raises the question of whether I should exercise "pendent venue" and decline to sever and transfer the claims against it. "This doctrine is an exception to the general rule that venue must be established for each claim in a complaint." *McNeill v. James*, 2004 U.S. Dist. LEXIS 22804, at *4-5 (D. Md. Nov. 9, 2004). It "allows proper venue as to one claim to support both claims if there are two or more claims that amount to a single cause of action with two grounds for relief." *Id*. at *5 (citing *Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999)). The Fourth Circuit has yet to address this issue, but other courts have established two general approaches. *Id*. "Some have held that the more specific venue provision controls." *Id*. (citing *Lengacher*, 75 F. Supp. 2d at 519 (citing *Trujillo v. Total Bus. Sys., Inc.*, 704 F. Supp. 1031, 1032 (D. Colo. 1989))). In contrast, other courts deem the appropriate venue to be that of the "primary" claim. *Id*. (citing *Lengacher*, 75 F. Supp. 2d at 519 (citing *Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 664 (D.D.C. 1982))).

Here, pendent venue is inappropriate under both approaches. *See id* at *5-6. Title VII contains the more specific venue provision, and as discussed above, it dictates that venue is proper in the Eastern District of Virginia. Moreover, Harris expressly refuses to single out one claim as "primary" to the others. (Harris Opp. Br. at 11 (stating that the Title VII claims "are at least co-equal with his other claims")). Accordingly, the claims against URS will be transferred to the Eastern District of Virginia. *See* 28 U.S.C. § 1406(a).

III

Given that half of this action cannot be prosecuted here, both the interests of justice and judicial economy militate in favor of the exercise of my discretion to also transfer the claims against Parsons to the Eastern District of Virginia. *See* 28 U.S.C. § 1404(a). In reaching this conclusion I am guided by the standard factors courts consider when facing a motion to transfer under § 1404(a): "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (citations omitted). Of primary importance in this calculus is Harris' request that in the event I decided to transfer the claims against URS, that I transfer the entire action so that he would not have to expend double the resources and time to litigate the same underlying issues in two different courts. (Harris Opp. Br. at 16; *see also id*. at 15). This request causes the first, third, and fourth factors to weigh in favor of transfer, despite Parsons' opposition. The second factor also weighs in favor of transfer, as the overwhelming majority of relevant documents and witnesses are located in Northern Virginia.

      For these reasons, this action will be transferred to the U.S. District Court for the Eastern District of Virginia. An implementing order is attached.

Date: June 28, 2006             /s/_____
                                        J. Frederick Motz
                                        United States District Judge